UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
JOHN L. CILENTO,

                Plaintiff,

        -against-

MICHAEL CHERTOFF, Secretary of the
Department of Homeland Security,

                Defendant.
------------------------------------------------------X

**MEMORANDUM DECISION
AND ORDER**

05 Civ. 6243 (CLB) (GAY)

Plaintiff John Cilento, age fifty-one, is a white Italian-American male. He claims that his employer, the Department of Homeland Security, discriminated against him because of his age, gender, race and national origin in violation of the Age Discrimination in Employment Act of 1967, as amended, ("ADEA") 29 U.S.C. § 621 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Presently before this Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").[1] For the reasons set forth below, defendant's motion is granted.

**I. BACKGROUND**

The following facts–taken in the light most favorable to plaintiff–are gleaned from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from

---

[1] This motion is before me on the consent of the parties, pursuant to 28 U.S.C. §636(c).

affidavits, affirmations and exhibits submitted by the parties in support of their contentions. Any disputes of material fact are noted.

From 1980 to 1985, plaintiff was employed by the United States Federal Protective Service as a Federal Protective Officer. He left that job upon his appointment as a police officer with the City of Yonkers Police Department. Plaintiff was a Yonkers police officer for ten years, until he was injured in the line of duty and retired on disability.

On or about May 18, 2002, plaintiff applied via the Internet for the position of U.S. Customs Inspector, in response to vacancy announcement CH138958. According to the announcement, the Department of Homeland Security, Customs and Border Protection ("CBP") sought to fill full-time positions under the Federal Career Intern Program ("FCIP"); selectees would be appointed at either a GS-5 or GS-7 level, based upon their qualifications. The application contained four questions regarding qualification for the GS-7 position. Although plaintiff thought one of the questions was ambiguous, he answered "no" to all four questions–indicating that he did not have the necessary qualifications or experience for a GS-7 appointment. On the other hand, plaintiff's answers to other questions were sufficient to qualify him for a GS-5 appointment.

Four months later, plaintiff was notified by letter that he had passed the written application; he subsequently interviewed for the position. Approximately one year later, by letter dated October 15, 2003, plaintiff was notified that he had been selected for a Customs Inspector position at the GS-5 level. The letter provided details about the position and included the following statement: "Please note that the grade level and

2

location of the offer have been determined by the selecting official and are not negotiable." Plaintiff accepted the position and began work on October 20, 2003, stationed at Newark Airport.

About one month later, plaintiff called the human resources department in Washington, D.C. and spoke with Supervisory Human Resources Specialist Jerry Tavenner. Plaintiff stated that he had misinterpreted the description of specialized experience on the employment application and requested an upgrade to a GS-7 level. Tavenner explained to plaintiff that his GS level was based upon his answers on the application, which could not be changed after the fact.

On February 9, 2004, plaintiff contacted Tavenner via e-mail and reiterated his request for an upgrade to a GS-7 based on his work experience–which he failed to note on the application because he misunderstood the question regarding specialized experience. Plaintiff added "I understand that at least two individuals in the recent past with the same problem have appealed their case to you and were given a GS-7 rating." Tavenner denied plaintiff's request in an e-mail response, in which he stated: "As you indicated, you only self-certified as a GS-5. Therefore, the only grade for which you may be considered is the GS-5. Briefly, you competed with other folks at the GS-05 level and you were selected based on your referral on a GS-5 certificate of eligibles."

On or about March 26, 2004, plaintiff e-mailed Tavenner again and asked whether anyone at CBP was authorized to "correct" the mistake he had made in qualifying himself only as a GS-5, or whether there was anyone to whom he could appeal the issue. Tavenner, in his e-mail response, stated

Since this was an error you made on your application, no one can

3

> "correct" it for you. And once the closing date of the announcement passed, you cannot correct it to allow you to be considered for the higher grade level either. You can apply to a future announcement and correctly complete the application so that you self-certify at a GS-7 level...but odds are, you will have been promoted to the GS-7 level before you would be selected and appointed again at the GS-7 level.

At some point during the next month, plaintiff spoke with one of his supervisors, Lorraine Spina, about his efforts to upgrade his GS level. Spina told plaintiff that she had originally been hired as a GS-5 but was upgraded to a GS-7 after explaining to CBP that she qualified for the higher grade. According to plaintiff, Spina wrote numerous letters and made many phone calls over the course of a year until CBP granted her a retroactive upgrade. Plaintiff states that Spina was hired under the "Veterans Readjustment Act" and, therefore, did not have to qualify herself for a GS grade but had to submit a resume instead.

Based upon his conversation with Spina, plaintiff came to believe that CBP was discriminating against him because of his age and gender. On April 28, 2004, plaintiff contacted an EEO Officer; the parties proceeded to mediation on July 22, 2004. They ultimately agreed on proposed terms of a compromise, pursuant to which plaintiff would be upgraded prospectively to a GS-7 if he indeed had the necessary qualifications and had performed well since his hire.

Approximately two weeks after the mediation session, plaintiff spoke with inspector Caryl Johnson who, according to plaintiff, stated that he had been hired as a GS-5 and retroactively upgraded to a GS-7. Johnson, who is African-American, was hired under the FCIP (as was plaintiff) but, unlike plaintiff, Johnson certified himself as a GS-7.

4

On August 23, 2004, plaintiff learned from the EEO Officer that his GS level upgrade had not yet been processed. Plaintiff told the EEO Officer that he wished to reinstate his discrimination complaint (which plaintiff had withdrawn shortly after the mediation session). On September 7, 2004, plaintiff requested (via e-mail to the EEO Officer) that a racial discrimination claim be added to his complaint. On October 6, 2004, plaintiff filed a formal discrimination complaint with the Department of Homeland Security, alleging that the CBP's refusal to upgrade his GS-level constituted discrimination based upon his race, national origin, age and gender. Plaintiff's administrative complaint was dismissed on November 29, 2004 on the ground that he had previously raised and withdrawn his claims. He appealed the dismissal to the EEOC; the EEOC affirmed the dismissal on April 5, 2005. Plaintiff commenced the instant action on or about July 7, 2005.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists. LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995). If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial." FRCP 56(e).

When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

Caution should be exercised in addressing summary judgment motions in discrimination cases where intent and state of mind are at issue because "careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000) (citations omitted). Nonetheless, the Second Circuit has expressly "remind[ed the] district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quotation and citation omitted). On the one hand, mere conclusory allegations of discrimination will not defeat a summary judgment motion; a plaintiff in a discrimination case must proffer "concrete particulars" to substantiate his claim. See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). On the other hand, courts must be aware of the fact that "discrimination will seldom manifest itself overtly." Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999). Courts must therefore "carefully distinguish between evidence that allows for a reasonable

6

inference of discrimination and evidence that gives rise to mere speculation and conjecture." Id. Thus, the ultimate question in deciding a summary judgment motion in a discrimination case "is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances." Id.

### III. SUMMARY JUDGMENT ANALYSIS: TITLE VII AND ADEA

In the absence of direct evidence of discrimination, courts analyze claims brought under Title VII and the ADEA pursuant to the three-step burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000). Under the McDonnell-Douglas framework, plaintiff must first establish a prima facie case of discrimination by demonstrating that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was performing his duties satisfactorily; and (4) the circumstances surrounding the employment action give rise to an inference of discrimination. See Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005). Plaintiff's burden of establishing a prima facie case is "minimal." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If the plaintiff establishes his prima facie case, a presumption that the employer unlawfully discriminated against the employee is raised and the burden of production then shifts to the employer "to articulate some legitimate nondiscriminatory reason" for its actions. See Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en banc). "The employer's explanation must be clear and specific, so that the employee has an opportunity to demonstrate pretext." Hill v. Taconic Dev. Disabilities Serv.

7

Office, 181 F. Supp.2d 303, 317 (S.D.N.Y. 2002).

"Should the defendant carry this burden, the plaintiff must then demonstrate that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. See St. Mary's Honor Ctr., 509 U.S. at 507-08. In determining whether the plaintiff has met this burden, the court must take a "case-by-case" approach that weighs "'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case.'" James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148-49 (2000)). In other words, although the burden of production shifts, "the ultimate burden rests with the plaintiff to offer evidence sufficient to support a reasonable inference that prohibited [age, gender, race or national origin] discrimination occurred." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (quotation and citation omitted).

## IV. PLAINTIFF'S RACE AND NATIONAL ORIGIN CLAIMS

Plaintiff claims that CBP refused his request for a retroactive upgrade to a GS-7 level because of his race and national origin. There is no dispute that he has satisfied the first three prongs of his prima facie case; the fourth prong, however, is contested. Defendant argues that it is entitled to summary judgment because plaintiff proffers no evidence showing that the circumstances surrounding CBP's denial of his request for a GS-level upgrade give rise to an inference of discrimination.

Plaintiff argues that an inference of discrimination arises from the fact that CBP

granted Caryl Johnson's request for a retroactive upgrade to the GS-7 level but denied plaintiff's. Plaintiff may establish the fourth element of his prima facie case by showing that he and Johnson "were similarly situated in all material respects." See Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997). While "their circumstances need not be identical, . . . there should be a reasonably close resemblance of facts and circumstances." Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001). In other words, Johnson "must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference may be attributable to discrimination." McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001). Whether employees are similarly situated is ordinarily a question of fact. See Feingold v. New York, 366 F.3d 138, 154 (2d Cir. 2004). "This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." Harlen Assocs. v. Incorporated Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

Here, plaintiff fails to satisfy his burden of proffering evidence based upon which a reasonable jury could find that he and Caryl Johnson were similarly situated. Johnson applied for the same position as plaintiff and was also hired pursuant to the FCIP; unlike plaintiff, Johnson certified himself on his application as a GS-7. Plaintiff alleges that Johnson was told he did not qualify for the GS-7 position and, therefore, was hired as a GS-5. He states that "Inspector Tanacredi [the local union president] is willing to testify to these facts. Mr. Michael Choma can also verify the fact that Mr. Johnson was hired as a GS-5 and subsequently upgraded." Plaintiff submitted copies of Johnson's employment records which–according to plaintiff–confirm his allegations. Contrary to

9

plaintiff's contention, however, Johnson's employment records clearly indicate that he was <u>hired</u> as a GS-7. Nonetheless, plaintiff asserts that Johnson told him that he [Johnson] was hired as a GS-5 and retroactively upgraded to a GS-7. Plaintiff, however, has failed to submit an affidavit from Johnson, Tanacredi or Choma; Johnson's out-of-court statement–"offered to prove the truth of the matter asserted"–is inadmissible hearsay. <u>See</u> Fed. R. Evid. 801(c). Therefore, because Johnson's statement would not be admissible at trial, plaintiff may not rely on it in opposition to defendant's summary judgment motion. <u>See</u> <u>Mendez v. Walker</u>, 110 F. Supp.2d 209, 212 n.1 (W.D.N.Y. 2000). In sum, the record provides no basis for plaintiff's claim that he and Caryl Johnson were "similarly situated in all material respects." <u>Shumway</u>, 118 F.3d at 64. As a result, plaintiff fails to establish a prima facie case of discrimination based on his race or national origin. Accordingly, plaintiff's Title VII claims of race and national origin discrimination must be dismissed.

## V.  PLAINTIFF'S AGE AND GENDER CLAIMS

Plaintiff also claims that CBP refused his request for a retroactive upgrade to a GS-7 level because of his gender and age. Defendant asserts that plaintiff fails to establish a prima facie case of gender or age discrimination because he proffers no evidence showing that the circumstances surrounding CBP's denial of his request for a GS-level upgrade give rise to an inference of discrimination.

Plaintiff argues that an inference of discrimination arises from the fact that CBP granted Lorraine Spina's request for a retroactive upgrade to the GS-7 level but denied plaintiff's. He contends that Spina had originally been hired as a GS-5 but was

upgraded to a GS-7 after complaining for a year that she qualified for the higher grade. Defendant submitted copies of Spina's employment records, which indeed reflect that she was hired as a GS-5 Customs Inspector effective December 11, 1995 and was retroactively upgraded to a GS-7 on December 25, 1996. Given plaintiff's minimal burden at the prima facie stage, he has proffered evidence based upon which a reasonable jury could find that he and Lorraine Spina were similarly situated. Plaintiff has therefore established–albeit minimally–a prima facie case of gender and age discrimination.

Thus, the burden of production shifts to defendant to proffer a legitimate, non-discriminatory reason for its denial of plaintiff's request for a retroactive GS-7 upgrade. Defendant asserts that it denied plaintiff's request in order to ensure the fairness and integrity of the selection process. Defendant proffers the affidavit of Jerry Tavenner, Supervisory Human Resources Specialist, wherein he explains the selection process (governed by administrative regulations) as follows: Plaintiff responded to a vacancy announcement for a position to be filled under the FCIP. Applicants for open positions under the FCIP were rated based on the results of a written exam, supplemented by appropriate veterans' preference points. Qualified applicants were referred for consideration on a "certificate of eligibles," in which the candidates were ranked based on their supplemented ratings. A "certificate of eligibles" was prepared for each level–one for GS-5 and one for GS-7. Applicants who qualified for both levels–and who asked to be considered for both levels–were listed on both certificates. The CBP was required to fill each vacancy from the highest three names on the certificate. After one name was chosen, the highest three remaining names would be considered for the next

11

appointment.

Defendant asserts that applicants were clearly instructed at the start of the application that their answers would be considered final, because allowing applicants to make retroactive changes would alter the order in which all lower-rated applicants appearing on the same certificate of eligibles received consideration. Defendant therefore contends that it denied plaintiff's request for a GS-7 upgrade because he self-qualified only as a GS-5 and because agency policy prohibited applicants from belatedly changing their application answers. Defendant further asserts that Spina, unlike plaintiff, could have her GS-level retroactively upgraded without prejudicing other applicants for her position. Plaintiff acknowledges that Spina was appointed under the Veterans Readjustment Act ("VRA"). Tavenner states in his affidavit that, unlike applicants appointed under the FCIP, applicants appointed under the VRA were not "competing" on a numerically rated list but instead were considered according to veterans' preference categories alone. Tavenner further avers that the VRA did not require CBP to announce the position for which Spina was hired. In sum, defendant has met its burden of articulating a legitimate, non-discriminatory reason for its denial of plaintiff's request for a retroactive GS-level upgrade.

Hence, resolution of the instant motion turns on the issue of whether plaintiff has proffered sufficient evidence from which a reasonable jury could infer that defendant's proffered reasons were merely pretextual and that its actual motivations were, more likely than not, discriminatory. Plaintiff presents little, if any, independent evidence supporting an inference that defendant's stated explanation is pretextual. He relies entirely on the same evidence he relied upon to establish his prima facie case; his prima

facie case is weak, at best. Plaintiff has not cited any specific testimony or furnished any affidavits or documents which raise a genuine issue of fact regarding the truth of defendant's explanation. In sum, plaintiff fails to proffer sufficient evidence from which a reasonable jury could conclude that defendant discriminated against him because of his age or gender. In other words, as a matter of law, plaintiff has failed to carry his "ultimate burden." Accordingly, plaintiff's Title VII claim of gender discrimination and his ADEA claim of age discrimination must be dismissed.

## VI. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is **GRANTED** and plaintiff's claims are dismissed.

The Clerk of the Court shall enter judgment accordingly.

Dated: August 4, 2006
White Plains, New York

**SO ORDERED:**

_____
GEORGE A. YANTHIS, U.S.M.J.